IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**GLENDA G. MORGAN**                                                                 **PLAINTIFF**

Case No. 4:05-cv-988

**JO ANNE B. BARNHART,**
**COMMISSIONER, SOCIAL**
**SECURITY ADMINISTRATION**                                                **DEFENDANT**

**ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Glenda G. Morgan appeals the decision of the Commissioner of the Social Security Administration to deny her claim for Disability Insurance benefits. Both parties have moved for judgment on the administrative record[1] and filed supporting briefs. For the reasons discussed below, the Court remands for further development of the record consistent with this opinion.

**I.   BACKGROUND**

Plaintiff Glenda Morgan was forty-six years old at the time of the hearing. [Tr. 16]. She has a twelfth grade education and past work experience as a certified nurse's assistant. [Tr. 64, 73]. Plaintiff filed for supplemental security income on July 31, 2003, alleging that she became disabled on November 10, 2002,[2] due to shortness of breath, swelling in the feet, and high blood pressure, which was denied both initially and upon reconsideration. [Tr. 45-50, 58]. Plaintiff

---

[1]The Court notes that the administrative record in this case was missing pages 10 and 11. However, the missing pages were submitted to the Court on March 8, 2007.

[2]Although Plaintiff lists November 10, 2003, as her onset date in her Disability Report, the report is dated August 2, 2003. Furthermore, the ALJ acknowledged that Plaintiff testified that her last day of work was November 10, 2002. Therefore, it appears that Plaintiff's alleged onset date is actually November 10, 2002.

1

requested a hearing before an administrative law judge ("ALJ"), which was held by ALJ Jimmy D. Puett on September 2, 2004. The Plaintiff appeared unrepresented by counsel and testified. A vocational expert also appeared and testified. The ALJ found that Plaintiff had valgus deformity of the right knee, edema in the feet and legs, high blood pressure, and obesity, impairments that were severe within the meaning of the regulations, but not severe enough to meet or medically equal one of the impairments listed in the listing of impairments. [Tr. 12]. The ALJ concluded that Plaintiff was not disabled by decision dated November 8, 2004. [Tr. 18-19]. Plaintiff appealed the decision by the ALJ to the Appeals Council. The Appeals Council declined Plaintiff's request for review on May 18, 2005. [Tr. 3-5].

## II. LEGAL PRINCIPLES

### A. Substantial Evidence Standard of Review

In this action for judicial review pursuant to § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), the Court must determine whether there is substantial evidence on the record as a whole to support the decision of the Commissioner. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). This Court's review is deferential; the Court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Prosch,* 201 F.3d at *1012*. In determining whether substantial evidence exists, the court will consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel,* 212 F.3d 433, 435-36 (8th Cir. 2000). However, the Commissioner's findings may not be

reversed merely because evidence may exist to support the opposite conclusion. *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994).  As long as substantial evidence in the record supports the Commissioner's decision, the decision may not be reversed either because substantial evidence exists in the record that would have supported a contrary outcome, *id.,* or because this Court would have decided the case differently. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

      **B.**     **Disability Determinations and the Burden of Proof**

The Social Security Regulations (the "Regulations") prescribe a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. § 404.1520 & 416.920 (2003); *Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart,* 353 F.3d 602, 605 (8th Cir. 2003); *accord Lewis v. Barnhart,* 353 F.3d 642, 645 (8th Cir. 2003). The United States Supreme Court has explained:

> The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." . . . Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting."

*Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. § § 404.1521(b), 416.921(b)).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520; *Kelley,* 133 F.3d at 588.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity ("RFC") to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(4)(iv); 404.1545(4); *see Lewis,* 353 F.3d at 645-46 ("RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, 'what the claimant can still do' despite his or her physical or mental limitations.") (citing *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987); 20 C.F.R. § 404.1520(e) (1986)); *Dixon, supra.* The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner "to prove that there is other work that [the claimant] can do, given [the claimant's] RFC [as determined at step four], age, education, and work experience." Clarification of Rules Involving Residual Functional Capacity Assessments, etc., 68 Fed. Reg. 51,153, 51,155 (Aug. 26, 2003). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Id.;* 20 C.F.R. § 404.1520(4)(v); *Dixon, supra; Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001) ("[I]f the claimant cannot perform the past work, the burden then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.") (citing *Cox v. Apfel,* 160 F.3d 1203, 1206 (8th Cir. 1998)); *Nevland v. Apfel,* 204 F.3d 853, 857 (8th Cir. 2000). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find the claimant is disabled. 20 C.F.R. § 404.1520(r)(v). At step five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Goff*, 421 F.3d at 790 (citing *Stormo v. Barnhart,* 377 F.3d 801, 806 (8th Cir. 2004)).

## III.   DISCUSSION

Plaintiff argues that the ALJ failed to fully and fairly develop the record in this unrepresented claim. Plaintiff states that the ALJ has a heightened duty to fully and fairly develop the record in cases where the claimant is unrepresented by counsel. Specifically,

Plaintiff argues that the ALJ did not attempt to obtain medical evidence concerning the level of work activity that the Plaintiff could perform on a sustained basis.  Plaintiff argues that it violates the Commissioner's duty to fully and fairly develop the record to make an RFC assessment without adequate medical evidence.  *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) ("The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled.").

Plaintiff states that if a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record.  *Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984) ("[I]f a treating physician * * * has not issued an opinion which can be adequately related to the [Social Security Act's] disability standard, the ALJ is obligated * * * to address a precise inquiry to the physician so as to clarify the record.").  Plaintiff argues that it is reversible error for the ALJ to conclude that the claimant has the residual functional capacity to perform at a certain level of work if the limitations from pain are stated only generally in the medical evidence and a claimant's testimony.  *Id*.  In *Vaughn*, the Eighth Circuit found that "the Appeals Council erred in concluding that [the claimant] had the RFC to perform sedentary work because, as the Appeals Council acknowledged, [the claimant]'s limitations resulting from his back impairment and other impairments [we]re stated only 'generally' in the medical evidence and [the claimant]'s testimony.  *Id*.  The Court remanded the case requiring the Secretary to obtain medical records and address an inquiry to claimant's treating physician as to claimant's limitations and develop claimant's testimony.  *Id*.

Additionally, Plaintiff states that the Eighth Circuit's previous decisions indicate that an ALJ must obtain some medical information from an examining source that addresses a claimant's ability to function in the workplace. *Lauer v. Apfel*, 245 F.3d 700, 705 (8th Cir. 2001); *Dykes v. Apfel*, 223 F.3d 865, 866-67 (8th Cir. 2000); *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). In *Lauer*, the Eighth Circuit found that because a claimant's RFC is a medical question, some medical evidence must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace. 245 F.3d at 704. The court stated that "the weight given the opinions of 'nonexamining sources' . . . 'depend[s] on the degree to which they provide supporting explanations," *see* 20 C.F.R. § 404.1527(d)(3)" . . . and "even if a consulting physician examines a claimant once, his or her opinion is not considered substantial evidence, especially if . . . the treating physician contradicts the consulting physician's opinion." *Id*. at 705. *Accord Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). In *Dykes v. Apfel*, 223 F.3d 865, 866-67 (8th Cir. 2000), the court accepted that the record must include some medical evidence that supports the ALJ's residual functional capacity determination, but rejected the contention that residual functional capacity may be proved *only* by medical evidence. The court found that the requirement for supporting medical evidence was met in the treatment histories of the claimant's shoulder condition and the release by a treating physician to return to light work. *Id*. In *Nevland*, 204 F.3d at 858, the Eighth Circuit found that the ALJ's reliance on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of claimant's RFC did not satisfy the ALJ's duty to fully and fairly develop the record where

there was no medical evidence about how the claimant's impairments affected his present ability to function.

The Plaintiff also cites *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003), in which the Eighth Circuit noted that "an administrative law judge may not draw upon his own inferences from medical reports." (citing *Lund v. Weinberger,* 520 F.2d 782, 785 (8th Cir. 1975)). In that case, the court held that the ALJ improperly drew inferences from the medical reports, and relied on the opinions of nontreating, nonexamining medical consultants who relied on the records of the treating sources to form an opinion of the claimant's RFC. The court also stated that the opinions of non-treating practitioners who have attempted to evaluate the claimant without examination and the testimony of a vocational expert who responds to a hypothetical based on such evidence do not normally constitute substantial evidence on the record as a whole. *Id*. (citing *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000); *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir.1999)).

Plaintiff also argues that the Plaintiff informed the ALJ that she had been to Dr. Beavers several times recently, but that only one clinic visit was submitted into evidence. [Tr. 166]. Plaintiff states that "[i]t would have been helpful if the [ALJ] had ordered Dr. Beavers' complete records to more fully develop the record at the time of the hearing." Plaintiff further argues that she testified that she had a foot impairment, but the ALJ did not develop the record as to any restrictions resulting from that impairment through either a treating source or consultative examination. [Tr. 172]. Plaintiff testified that she had planters' warts and bunions on the bottoms of her feet that caused pain. [Tr. 172]. Additionally, Plaintiff argues that she alleged and testified that the swelling in her hands does not allow her to handle or grasp objects. Plaintiff

states that this limitation would affect the cashier and assembler jobs utilized at Step Five to deny Plaintiff's claim.

Defendant acknowledges that the ALJ has a duty to develop the record fully and fairly, but that the ALJ has a duty to develop "a reasonably complete record," not the perfect record, and that the ALJ did so in this case. *See Brown v. Charter*, 87 F.3d 963, 966 (8th Cir. 1996). Defendant argues that Plaintiff has the burden of showing that she has a medically severe impairment or combination of impairments and that the impairment prevents her from performing her past work. *Brown v. Shalala*, 15 F.3d 97, 99 (8th Cir. 1994). "Only if the 'sequential evaluation process proceeds to the [last] step' does the government bear the burden of showing that 'the claimant is able to perform work available in the national economy. . . . If the process ends at [an earlier step], the burden of proof never shifts' to the government." *Id*. Plaintiff states that it was the Plaintiff's duty to submit evidence to the ALJ showing that she had a disabling medical impairment, and she failed to do so. Defendant further argues that a reversal based upon a failure to develop the record is only warranted where such failure is unfair or prejudicial, and that Plaintiff has not established such a failure.

In this case, the ALJ acknowledged that the Plaintiff had the severe impairments of valgus deformity of the right knee, edema in the feet and legs, high blood pressure, and obesity. The ALJ provided an extensive review of the medical evidence submitted. It appears that the ALJ found significant the fact that on May 8, 2003, Dr. Russell noted that "cardiac rhythm was regular and without murmur, rub, or gallop, chest was clear to auscultation, no carotid bruits, TSH was normal, CMP was normal, and hemoglobin A1C was normal obesity," and that "what sounded like . . . congestive heart failure apparently had compensated for now." [Tr. 13]. The

ALJ also noted that clinic notes from June 12, 2003, reveal that the Plaintiff had lost weight and in general felt "okay," and that Plaintiff's stress echo and chest x-ray taken on October 8, 2003, were normal. [Tr. 13-14]. Dr. Henry completed a cardiac assessment form on November 17, 2003, and stated that the Plaintiff's chest pain was unrelated to exertion. [Tr. 14]. With regard to Plaintiff's valgus deformity and edema, Dr. Beavers noted that anti-inflamatories had been started and recommended elevation, limitation of salt, and increased potassium. [Tr. 14].

The ALJ's opinion details a supplemental interview form completed on August 2, 2003, in which Plaintiff states that she quit work due to her husband's health problems, not her own; she could perform personal care and household tasks, but had to sit and rest often; could shop for groceries and clothes and run postal and banking errands; and she could drive. [Tr. 14]. The ALJ also reviewed the Plaintiff's testimony at the hearing, where she stated that she arises early and can do house cleaning and cooking for short periods of time; she sits with her feet elevated; and shops for groceries when she is able to do so. She also testified that she drives her husband to appointments, is able to stand for only 30 minutes, walk for a distance of only 30 to 50 feet, and sit for only 45 minutes. She stated that she has cramps, tightness, aching, and burning in her legs on a daily basis.

However, the ALJ questioned the degree to which her impairments limited Plaintiff's ability to function. The ALJ stated that Plaintiff's medical treatment has been routine and conservative in nature, and that her medications have been generally successful in relieving her symptoms. However, the Court notes that Dr. Beavers noted that the Lotrel prescribed to Plaintiff "has not really resulted in any significant improvement." [Tr. 156]. Additionally, it appears that the ALJ may have discounted Plaintiff's obesity and shortness of breath due to her

failure to lose weight and quit smoking.  Finally, the ALJ found that Plaintiff "has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."

Initially, it must be noted that at no place in the law does it state that an ALJ must request some type of special RFC assessment in order to evaluate a claimant's RFC.  However, the cases cited by Plaintiff indicate that an ALJ must obtain some type of information from an examining medical source that addresses a claimant's ability to function in the workplace.  Although such information can be in the form of a release to return to work, specific limitations placed on a claimant, or comments regarding a claimant's ability to function in the workplace, no such information from an examining medical source is contained in the record in this case.

The Court finds that the ALJ did not adequately develop the record, and remands the case.  The Secretary is directed to address an inquiry to claimant's treating physician as to claimant's limitations.  Specifically, Plaintiff's limitations resulting from her edema should be more fully addressed.[3]  Furthermore, the record should be more fully developed regarding Plaintiff's medical records, specifically her treatments by Dr. Beavers, her alleged foot impairment, and her alleged limitations as a result of swelling in her hands.

---

[3] The Court notes that the ALJ specifically asked the vocational expert whether any jobs would be available in the national economy assuming that an individual with the same limitations he eventually found Plaintiff had.  The vocational expert found that approximately 1,400 jobs in Arkansas, 125,000 jobs in the U.S. economy, and 100 jobs in the northwest Arkansas area existed. [Tr, 182-83].  Then, the ALJ asked whether any jobs would be available if the Plaintiff needed to elevate her foot for fifteen minutes out of each hour. [Tr. 183].  The vocational expert stated that the additional requirement to have her foot elevated for fifteen minutes out of each hour would eliminate the jobs available in the national economy. [Tr. 183].  The Court notes that Dr. Beavers recommended elevation for Plaintiff's edema, but the ALJ's finding as to Plaintiff's limitations did not include the need to elevate her foot. [Tr. 156].

Additionally, it is unclear whether the ALJ considered Plaintiff's obesity and shortness of breath in reaching his RFC determination, or if he discounted Plaintiff's obesity and shortness of breath based upon a failure to lose weight and quit smoking. The ALJ stated:

> The undersigned acknowledges that the medical records certainly bear out that the claimant's morbid obesity limits her physical activity and is a contributing factor to her shortness of breath and hypertension; however, there is no evidence that the claimant is on a serious weight reduction program or that she has been on one in the past. Additionally, on September 16, 2003, Dr. Henry noted that Ms. Morgan reported a cigarette smoking habit of 30 years and shortness of breath with 2 feet of walking. The undersigned takes note of the fact that Dr. Henry counseled the claimant about the risks associated with smoking and recommended that she quit smoking cigarettes.

Therefore, the ALJ should clarify this point.

Accordingly,

IT IS THEREFORE ORDERED THAT the final decision of the Commissioner is reversed and Plaintiff's case is remanded for further development consistent with this opinion. On remand, Plaintiff will have the opportunity to address her remaining arguments with the ALJ, and the ALJ will, likewise, have the opportunity to re-evaluate the evidence and revisit his analysis.

Dated this 8th day of March, 2007.

/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE